You're splitting your 20 minutes to a bono counsel? Your Honor, I'm Lyon Wayland and I am the attorney for the petition. Ms. Megan Barbero is also here. I'll be going first and then she will be next. Your Echolera also, but I'll do the best we can with the Echolera. Should I begin? Please proceed. Thank you. Thank you. Thank you, ma'am. Please support. I don't have a calendar. When the BIA issued its decision regarding the mother and her three children, they were well aware that three of those children were born in either China, Canada, or Panama. They entered an order of withholding, saying that they could not be deported to China. They did not enter an alternate order. The Board was silent regarding the children born in Canada and Panama as far as an alternate order and did not order them to be deported to their country of birth. In the instant case, the father was born in China. The other three children were all born in Panama. The judge ordered an order of withholding to China and then entered an alternate order to deport all four of them to Panama. The BIA, by making its decision in the second case, after we filed the motion to reopen and raised this issue, approved conflicting orders involving exactly the same set of people, the same set of facts, the same set of circumstances. Because the BIA did not make any kind of written decision of explanation, it is only the judge's explanation that attempts to explain this difference. The judge said that it was justified, that the different orders were justified because the case before the Board was an exclusion case and the case before her was a deportation case. I'm baffled by this statement because it was not explained in any way and there's not a single fact sheet with any authority for it, and the government in this case does not intend to defend it. Did you petition for review from that decision? I'm sorry? Did you petition for review from that decision? Yes, that was the main reason that I filed this petition for review. And what happened? That's where we came from. I mean, before the original decision. No, well, the original decision involving the mother, the Board granted withholding in that case. I know that, but then with respect to these people, the Board denied, right? So when I came back and I filed a motion to reopen and asked the judge. No, but that's the motion. No. Before the motion to reopen, there was no appeal from the original decision. Why not? Why not? If you think it was wrong. Pardon? If you think it was wrong, why didn't you appeal? Well, at the time the judge made that decision, first of all, I did not realize that it conflicted with the original Board's decision in the mother's case. And why not? And why not? I just did not go back and read it that way. Secondly, I did not think that her decision included Panama. You didn't know that? And so I was in error in that. But I also discussed the matter with the respondent here, Mr. Chong, and he and I talked it over and we decided that there was a number of reasons why we did not want to appeal. So you're telling me that you and the lead petitioner discussed this and decided not to appeal? That's correct. That's correct. All right. Well, then how can we complain now? Well, what happened was when I came, so after they sent out the bag and baggage letter to the petitioners, I went down and I talked to immigration and they said, well, that they had this order and I discussed it with one of the supervisors and realized that I thought the judge had made a mistake. So I came back in and I filed a motion to the judge to modify the order, to make it comply with exactly what the Board of Immigration Appeals had said. She said no. She said that's the discretion case and this is the deportation case. Now, are you referring now to your motion to reopen or something else? That was the motion to reopen. For the immigration case. So then I appealed that. Now, when did you file that motion? Pardon? When did you file that motion to reopen? In 2003. And that was how long after the decision issued? About three years. And you know that was late, right? I know it was late, yes. So did you have an excuse for the lateness? The excuse was that the original order that she had made was basically, she set it aside because it was not in conformance with what the BIA had said. Well, that's the error in the order. That's not the excuse for being late. You could have noticed that the day the decision was issued. That's correct. So what's the reason, what excuse did you give, you know, the agency for being late with your motion? I don't recall that I explained or discussed that. You didn't explain it in the light? No. Well, there is a time limit to file a motion to reopen, isn't there? Yes, there is. And you didn't meet that time limit? No. And why should you get relief? Because the court always has the power to correct and correct errors made. And I was saying the judge in this case had made a mistake. And she made a mistake. So you're saying because the judge makes a mistake, that can be, you know, any decision the judge makes that's mistaken could be reopened at any time, years later. When the order itself is, as far as I was concerned, the order itself was not a valid order. And, you know, and judges can make, they can say anything and make it into an order. And if it has no authority, has no backing, then they should be honest enough to say, yes, you're right, I made an order that should not have been corrected. So these time limits, you know, for appealing, for filing a motion to reopen, filing a petition for review are meaningless. No, they're not meaningless. Well, what do they mean? What do they mean in your case? What we were saying was that the judge in making her decision had simply made a decision that she could not have made. It was an incorrect decision. And I asked her, I went back to her and I said. So you're saying an incorrect decision can be reopened at any time, years later? Yes. In any case. What's the purpose of these time limits, then? They are time limits that are assuming that the court has not made a grievous error. I think they turn out. I mean, the only time they apply is if there's no merit to the appeal because the judge didn't make a mistake. I'm saying if the judge didn't make a mistake, then they apply. If the judge didn't make a mistake, then the time limit is clearly applied. When there's no merit to the appeal anyway. Okay. Well, I think we've got a problem with the time limit. Do you want to save your last two minutes for rebuttal? Thank you. I have one question. What's the current status of the pending I-130 petitions for Ioanna, Juliana, and Taeyeon Chung? One of those children is a U.S. citizen but cannot adjust status because she did not make a legal inspected entry into the United States. So the Immigration Service has no jurisdiction to give her adjustment of status. The other two children are both unmarried, and they were petitioned by mother, who is now a U.S. citizen, but they're on a waiting list that Immigration has of about six or seven years. I think they have about another three years to go. I got your answer. Let's hear from pro bono counsel Megan Barbero. Thank you, Your Honor. Thank you, Your Honor. All right. With the court's permission, I'd like to amend the time for rebuttal. This is even worse. Maybe without the microphones we'd do better. Harry can't hear us. I mean, your echo is so bad. Is there anything I can do differently to make it better? That sounds better. Maybe if I stand back a little bit. Yeah. May it please the court. The Chong's received ineffective assistance. Go ahead. The Chong's received ineffective assistance of counsel. Well, first, let me first re-straighten out the answer to Judge Pragerson's question. There are three people. One, as I understand, the problem is the supposed entry without inspection. That's the problem with that one. The other two, Tian, as I understand it, has a visa petition that's been approved. All she needs to adjust her status is a joint motion with the government. It's Juliana who has the entry without inspection. Yes, that's the one that has the entry without inspection. Right. But I think that it's possible that she could show on remand because she entered with her brother. I wasn't trying to get to the merits. I'm just trying to say where they are at the moment. Tian has everything that would allow her to adjust status if the government will agree to file a joint motion. That's my understanding, that he could adjust status. And Johanna has the only her only problem is the waiting period. I believe that's also correct. And with respect to Juliana, I think she could overcome the what may be an error stating that she entered without inspection. Yes. And she's married to a U.S. citizen. Okay. And there's a third one?   Tian has no problem if she's ready to have her status adjusted if the government will make a joint motion. Johanna is on a waiting list for a visa that's seven years. Yes. And Juliana is the one that has the problem because it appears that at nine years old she entered without inspection, whereas her two siblings who entered at the same time entered with inspection. Correct. And so that may be a mistake in the charging document. And not if you could get a remand you think could establish that that was a mistake that she entered alone at the age of nine. Right. And she is sponsored by her U.S. citizen spouse. Yes. And the other two are sponsored by the mother who's now a U.S. permanent resident. Okay. All right. None of the merits. Go ahead. The Chung's received ineffective assistance of counsel before the agency, which the government does not dispute. Their counsel failed to understand that the service had designated Panama as an alternate country of deportation. That seems like just a, I'll call it a mere act of negligence. I mean, something that was overlooked. Even if it had been negligent during the proceeding to overlook the designation of Panama, which I think is a fairly significant error since it resulted in an order of deportation to Panama, once the order itself issued, it was certainly ineffective counsel to not recognize that an order of deportation to Panama could, in fact, result in his clients being deported to Panama. Counsel, even during his argument today, simply stated that he had not read that order carefully and did not understand the implications of the order. He unreasonably relied on the proceedings in Ms. Venn's case in support of his belief that this half of the family could not be deported. His failure to appeal, his failure to timely move to reopen or reconsider, and those regulations and statutes are set up explicitly so that counsel can raise errors of fact or law within 30 or 90 days of the original order. He did not do that. When he filed an untimely motion to reopen, he offered no excuse whatsoever for the two-year delay in filing that motion. All of these failures prejudiced the Chong's who had plausible grounds for relief that competent counsel would have developed and pursued before the IJ and certainly would have appealed to the VIA. What should we do with the fact that I'll call it the IAC claim, right? It's never been raised before the agency. Don't you have an exhaustion problem with that? The only exhaustion principles at issue here are prudential exhaustion principles. The jurisdictional bar does not apply because there's no remedy available as of right to the Chong's to raise this ineffective assistance claim. And this court should not require prudential exhaustion here, where the Chong's had no opportunity to raise the claim before the agency. It was first identified as a potential argument by this court in its December 2008 order. The record makes clear that this is an obvious case of ineffective assistance of counsel. No further factual development is needed on the issue. And if the court is not willing to grant relief on ineffective assistance of counsel and the Chong's now have to file a motion to reopen in the agency, there's no guarantee that they won't be deported during the pendency of that motion to reopen. And if that occurs, the motion to reopen would be considered withdrawn. So it's now untimely. There's a chance it will never even be heard in the agency if they're forced to file a motion to reopen. Now, all of these factors counsel against requiring prudential exhaustion in this case. And the government has not disputed the underlying merits of the ineffective assistance of counsel claim. Its only argument relates to the jurisdictional bar in 1252d1, which is clearly inapplicable under this Court's precedents. Well, if the government doesn't contest the underlying merits, then does that also serve like to toll the time on the motion to reopen? I think it's an additional reason for this Court to be able to grant relief without requiring exhaustion. Well, what should we do? They'll send it back to the agency, right? Yes. But I think in the first instance, this Court could find that there was ineffective assistance of counsel, grant the petition, and then send it back to the agency to consider the Chong's eligibility for relief from deportation to Panama and their underlying asylum claim. Well, you're giving us two alternatives, as I understand it. Your preference is that we decide the IAC claim on the merits? Yes. And alternatively, if we don't, you want us to remand to the agency to decide it? Or you want us to stay the mandate or the case till you file a claim for ineffective assistance of counsel? That's actually three, I think. It is three. The preference would be for this Court to decide ineffective assistance of counsel claim on the merits and then to remand to the agency to decide the underlying availability of relief. Yes. If the Court declines to decide ineffective assistance on the merits, it could remand that issue to the agency. Alternatively, and less desirably, the Court could deny the petition, in which case we would request that the Court stay the mandate so that the stay of the deportation order remains in effect while the Chong's pursue a separate motion. But wouldn't deciding it on the merits violate the Ventura rule? The concern in Ventura and Thomas was very different. It was that the Court of Appeals not decide the ultimate issue of asylum eligibility in the first instance. And part of that concern is that the statute gives discretion over that decision to the agency and that there were also factual issues involved. Here, ineffective assistance of counsel is clear from the record before this Court, and it doesn't impact the ultimate eligibility determination. Well, I have two questions about that. One, do you have any case that would help support that theory that the Ventura is limited to the merits of the asylum claim as opposed to an issue such as IAC? The language of Ventura itself is very clear on this point, and this Court has, in a recent unpublished decision, considered the merits of an IAC claim that was not raised before the agency in Lopez Mendoza, and that in that case the Court actually raised the issue sua sponte when neither party had briefed it, but found because on similar facts, the petitioners were represented by the same counsel throughout their agency proceedings, and ineffective assistance was clear that it was And I'd like to remain or reserve the remaining seconds of my time for rebuttal. Okay. So Lopez Mendoza, you say is the name of that? Yes, I have. Let me get the site for you. I'm sorry. It's Lopez Vega. Vega? Lopez Vega, and the site is 2009, Westlaw, 1974315. Thank you. Let's just pause for a couple of minutes, because this equipment is not working. Well, we hear you fine. You don't hear us? I hear about every third word. Yeah, that's about what we're hearing, because it's the echo. You're the only one people can hear. Yeah, and I'm deeply sorry about it, too, and I don't want to get into that now. Judge, they can't do anything. Okay, they can't do anything with it. Can they? What's happening? Go ahead. Do you know what's happening with that? He's working behind the scenes. Caleb is working behind the scenes. Caleb is in contact with Judge Ferguson's clerk, it sounds like, and he says they can't do anything. They can't do anything about either one? Either one. I think everybody hears Judge Ferguson quite well. It's everybody else that we can't hear. Okay. If we put him on mute, he'll be able to hear it, so we don't want to talk to him. Okay. Can we go? Let's proceed. Let's proceed. Yeah, go ahead. Push it. Yeah, let's go ahead. Let's go. Is he here? Go. Go. We're here from the government. No, that's okay. We'll go ahead. No, we'll go ahead. It's okay. Thank you, Your Honor. In fact, you could have a few minutes to arrange, or a few seconds to arrange my materials. I'd appreciate it. Thank you, Your Honor. May it please the Court, my name is Jeffrey Bernstein. I represent the Attorney General of the United States. This Court has consistently held that aliens must exhaust before the Board of Immigration appeals any ineffective assistance of counsel claim. That... Well, not always. I mean, we have exceptions to that. Well, you have one exception in a published case in Asagura, but Asagura doesn't apply. In Asagura, the Court determined that the Court could entertain an ineffective assistance of counsel claim only when the alien had no administrative remedy. And the Court concluded that the alien in this case had no administrative remedy because he was represented by a sane counsel throughout administrative proceedings. As the dissent noted, and I think as we all know in such circumstances, there are... There are. There are administrative... There is an administrative remedy before the Board, and the administrative remedy is for an allegation of ineffective assistance of counsel during proceedings before the administrative agency. In what? Like in a motion to reopen? In a motion to reopen, which alleges... But you'd have to make out a case of tolling, then. That's exactly right. If you make out a case for tolling, then the... Well, an ineffective assistance of counsel, it doesn't... It's told until you learn about it, right? The rule is that if it is told until you learn about it, and the alien must exercise diligence in both determining whether or not ineffective assistance of counsel may have occurred or end in promptly taking action thereafter. So there is an administrative remedy. Mr. Bernstein? Yes, sir. Yeah. Don't you think that Whalen's ineffective assistance of counsel is plain on the face of the administrative record? I'm not so sure that it is, Your Honor, but in any event, this Court has... Isn't it plain today in this courtroom? I'm sorry, Your Honor. I'm sorry, Your Honor. I'm sorry, Your Honor. I'm sorry, Your Honor. Don't you... Isn't his... Isn't his ineffective assistance of counsel plain on this record? Well, we don't have the record, Your Honor. All we have are snippets of the record. The record was not developed because no appeal was taken to the Board of Immigration Appeals. If the Court complies with this precedent and exercises prudential exhaustion requirements, then a rec... And the reason for the prudential exhaustion requirement is so that the Board can develop a record on the issue, so that the Board can perhaps resolve it in a manner which... So would you welcome the opportunity to resolve it now? I'm not sure I understand the question, Your Honor. Would you welcome the opportunity to resolve the issue now if you were given it? Well, I'm not the Board. Well, you're representing the Board. I am representing the Board. I only know that the petitioner can file a motion to reopen and make his arguments. It appears possible that the Board would find tolling. I certainly can't guarantee that, but it's certainly possible because it appears that if there were ineffective assistance of until this Court entered its order. And therefore, if the petitioner just became aware of it, then he can... Then the Board may toll the time limitations. Again, I can't tell you what the Board is going to do. I think that's a very real possibility, though. By the way, Mr. Bernstein, do you agree with the... I'll call it summaries that have been made so far about the status of the various I-130 petitions? I don't know, Your Honor. I did note that Ms. Barbero's explication, I may have misheard, but Ms. Barbero's explication differed from Mr. Whalen's, I believe. So you have another version? I don't know, Your Honor. No, I don't know. Well, you've got one petitioner who's married a United States citizen, and the only reason she can't adjust is because when she was 9 years old, she came here without... Inspection. ...inspection, although everybody else who came with her came with inspection. The only thing I can say, Your Honor, is I assume we don't have a record, so I don't know. I assume that when the charges were pled to, and I believe the immigration judge says in his opinion, or actually he didn't because there wasn't an opinion, but I presume that at the master calendar hearing before the immigration judge, when the petitioners, then respondents, were called on to plead, they pled through counsel, I presume, that she entered, this individual entered without inspection. Again, I don't know because I haven't seen the record, and obviously that's another reason why the board should be... After all this time, don't you think the government might like to work out a practical solution to this problem? I mean, by now the father's dead. Do we want to wait until all the children are dead, too? Your Honor, if you're asking for my personal opinion, I'm happy to give it to you, but I presume you're asking for... Do you have any influence with this United States government? If I had any influence, Your Honor, and I don't mean to be smart, my position in the government would be far loftier than it is. Well, I don't know. I would hope they listen to lawyers who handle the cases. Most clients do. Lawyers look at cases, come back and tell their clients, you know, this is ridiculous. We don't need this litigation. We can work something out. Well, Your Honor, I'm certainly happy if the petitioners file a motion to reopen. I'm perfectly happy to reach out and discuss the matter with counsel for the agency. Well, maybe even if they haven't filed a petition, the agency could look at this problem, think about it, get together with counsel, and there should be a way to resolve this type of problem. Well, I certainly can carry your suggestion to Washington and the superiors and the client, perhaps. But as it stands now... Who makes these decisions? It's not President Obama. I know that. Who decides this kind of a case should proceed? We're now in the Court of Appeals. I mean, these people have been here for, what, 18 years, I guess. Well, I mean, the decision, certainly the decision to defend the decision below is made by OIL, the Office of Immigration and Litigation, in connection with lawyers for the agency. However, that being said, this Court's precedent is clear. The Supreme Court's direction in Thomas and Ventura is clear where the administrative agency has a procedure and a mechanism and the expertise to deal with these matters. Then the agency must make the decision. Well, you do have particular expertise, the Supreme Court says, in interpreting the statute, enforcing the statute, because that's committed to you. Do you have more expertise than we do in what constitutes an effective assistance of counsel? Well, I think in the immigration arena, the Board does, because the Board understands all the... I'm not saying the Court doesn't, but as a general matter, the Board understands the procedural niceties, it understands the law, it understands what may be deficient performance in the prosecution and defense of an immigration case. So I would say, yes, the Board does have expertise with respect to ineffective assistance of counsel in that regard. How can you say that? How can you say that when in these cases, in the vast majority of the cases, especially the ones I see, you've got incompetent counsel, you've got people represented by disbarred lawyers, you've got people represented by lawyers who've been reprimanded by the local bar associations, you've got notorios all over the place. Do you know about that? Well, I understand your point. Do you? I understand your point, Your Honor. And let me just say that I presume that the Board decides ineffective assistance of counsel claims all the time and addresses them. I presume that in many cases, they do find ineffective assistance of counsel and take action. Obviously, the matter was not presented to them in this case, so they could not take action. That's why the precedent of this court requires that the ineffective assistance of counsel allegations be presented to the Board for the first time. Here you have a lawyer who misses deadlines and can't give us a reason why. You have a lawyer who, in big letters on the relevant document, the word Panama is written. And he doesn't even see it, which tells me he didn't even read it. Why isn't that, those two items, at least an ingredient to determining that the ineffective assistance is this plain on this record? Well, I guess, Your Honor. And I mean, here you have six children. The father is dead. Three of them are here illegally. Three of them are in limbo. Huh? One of them is married. And what is it that the government wants to do, send them back to Panama? Your Honor, the government doesn't want to send them back to Panama. The government wants to have their ineffective assistance of counsel claim raised before the Board of Immigration Appeals. Again, I'm not so sure that's the relief you seek here to have the claim for ineffective assistance of counsel presented to the BIA. That's the relief in this case. The relief we seek here, Your Honor, is that the Court reject the ineffective assistance of counsel claim because it has not been prudentially exhausted, and that the Court affirm the immigrant law. Well, so you want to see it presented to the BIA so they can resolve it. Well, it can be presented to the BIA so they can resolve it simply by the Petitioner filing a motion to reopen.  How many motions to reopen are granted? I can't answer the answer. I don't know that. I haven't done any research, Your Honor, on how often the Board grants motions to reopen. In my experience in the immigration arena, they grant a lot. The number, I don't know. The percentage, I don't know. They do take action. They do grant them. It is not a useless exercise to seek reopening. Mr. Bernstein, before your time expires, I want to ask you an entirely different question, a question nobody's raised, but I think I can raise it because it may go to the jurisdiction of our Court. As several of you know several times now, the lead Petitioner is deceased. Right. And all we have left are derivative Petitioners. Right? Now, obviously, the case is moved with respect to the dead Petitioner, right? Right. What effect does that have on the derivative Petitioner as far as our jurisdiction is concerned? Do you know? I've thought about that. You never raised it in your brief. Well, I've thought about it. I think what we said in the brief is that there is no evidence of record establishing they filed independent asylum claims. Right. They were granted withholding of removal. There is no derivative relief for withholding of removal. There is for asylum, but not withholding of removal. So you think their withholding claim stands independently of being a derivative Petitioner on the asylum claims? I know that the immigration judge appears to have issued orders granting them withholding of removal. If so, then they have withholding of removal. And I think our ---- Withholding of removal from China, you mean? That's correct, with an alternative order of deportation to Panama because the immigration judge apparently found that they were firmly resettled in Panama. Now, I do want to emphasize that this specific scenario was also presented in the case of the other family. They were an exclusion proceeding, and as I indicated in our brief, the law in an exclusion case, the law, even if withholding is granted, requires that they return to the country from which they came, as long as it's obviously not the country to which deportation is withheld. So there's no inconsistency between any of the orders. I also want to point out that in this case, the counsel for the Petitioner, with respect to the other segment of the family, did raise the issues that Ms. Barbero indicates that he should have raised in this case. And the Board considered those issues and determined that there was firm resettlement, considered the allegations about mistreatment in Panama, and concluded that that did not establish that there was not firm resettlement. The Petitioner's counsel did not appeal. One can only presume, because he believed the – certainly one reason might be that he believed that they were correct. He did not file an appeal of the exact same determination, perhaps because we don't have the record in front of her, but assuming that it's the exact same determination. So one can presume that instead of just ignoring the deportation order, he may have presumed that the Board might have been right in the first case. So you say in the other case, what was the result? There was a withholding order from China and no mention of Panama? That's correct. And you say that means people have to go back to Panama under that order? That's correct. Because in an exclusion case, and we've cited the statute in our brief, although obviously it's been repealed after IRERA, but the statute requires that aliens in their situation who receive withholding removal to one country must go back to the country from whence they came. And that's because of the finding of firm resettlement?  That's absolutely correct. And those people are still here, right? That's correct, Your Honor. Apparently the service has not made an attempt to ensure that they return to Panama for whatever reason, which may well have led Mr. Wayland to believe that his individuals, well, they're all his individuals, but the petitioners in this case did not need to appeal. Or that the government wouldn't really, if they're not interested in deporting their brothers and sisters and mother, that they wouldn't really want to deport them either. Well, that may be true. One might think there's a rational government. The inaction of Federal agencies sometimes cannot be explained, Your Honor. Well, you know, we could use a little inaction in this case, too. I understand, Your Honor. That could solve the whole problem. We could have the order and just do the same thing as you did with their brothers and sisters. Just go do something productive with the government. I unfortunately don't run the government. Right. And I certainly don't run the DHS. I want to assure you of that. If I could run the DHS, perhaps things would be different, but I don't. Well, you know, you might think that when somebody new runs the DHS, there'd be some improvement. Your Honor, I'm familiar with the ---- That's what I wonder. Has anybody gone back to the DHS and said, look, this is ridiculous. We shouldn't be doing this. Who will go and talk to the DHS? I think that's the responsibility of the petitioners to file a motion to reopen. And they certainly can talk to the DHS as well and try to convince them to do a joint motion to reopen for the individual, certainly for the individual who may well be eligible for adjustment of status. Who should they call to at the DHS? Well, I think that ---- Can you give us a name and phone number? I don't think I can, Your Honor. I think Mr. Whalen, who practices before the Immigration Court and deals with the DHS in Los Angeles, would be more likely to have that knowledge than would I. But in any event, Your Honor, again, we believe that the precedent of this court precludes your examining and the Supreme Court precludes your examining the ineffective assistance of counsel claim. Again, we believe that a motion to reopen can be filed at this late date, and if what Ms. Barbaro asserts is correct, and we have no record of determining whether or not it does, the board can waive the time limitations and or numerical restrictions and entertain the claim. And if they entertain the claim or even refuse to waive, then they can come back to court. My last point I want to be, and I know I only have 17 seconds, is one of the reasons for a prudential doctrine is so aliens don't have an incentive to avoid the board's ---- I'm sorry, their administrative remedies. And that is one of the major reasons that this court has concluded time after time that prudential exhaustion is required. I mean, this court has a very large immigration docket. I don't think the court wants the immigration docket swelled by thousands more ineffective assistance of counsel claims, which the board can resolve very, very well. With that, Your Honor, action. We have a large immigration docket through the good graces of Attorney General Ashcroft. He loves us so much he gave us 8,000 one day. We'd have fewer if the government would solve some of the problems itself and act in a rational manner and not bring cases that shouldn't end up in a court of appeals. I mean, these cases should be dealt with practically. There's a lot of discretion in DHS and the Attorney General's office. Instead of giving us 8,000 cases, as Ted Ferguson says, it would be better if the administrative agency looked through them and said, you know, these are cases that really we don't have to deport the people. Well, Your Honor, certainly, as I'm sure you're well aware, there are procedures for that, and then OIL discusses if an OIL attorney believes the case should not go forward and convinces his or her superior. The 8,000 or whatever it is cases we got all bypassed the BIA through what was called streamlining. Well, I believe the BIA did issue decisions in those cases. They were just as affirmances without opinion. But I take your point, Your Honor. Is there a process when we get all this? It seems, I don't know, did you ever read the execution of Private Slovic? Unfortunately, in my generation, I saw the movie. I didn't read the BIA. Well, that's what happened there. He went through every level, and every level thought it was somebody else's problem. And that's what happens with these cases. You all say, well, okay, it goes up, and then we'll let the court settle it finally. A lot of these shouldn't be here, but I don't know how to find the process where it will really be discussed at the agencies. Talk to some of the people at the Justice Department. They'll tell you, well, that's really the problem of Homeland Security. And they make the decisions. There ought to be some way to take these cases and say which ones are cases in which we really want to deport the people. And, you know, as you said, the half of the family, well, they just didn't bother. It's not worth doing to deport them. This half, for some reason, we end up in the Court of Appeals. Isn't there somebody there that can look at this case and say this is not the kind in which we ought to be using everybody's resources to deport them? Let's go find some real criminals and deport them. I don't know why I'm making you this speech. I understand. I mean, the only thing I can say, Your Honor, is the Department of Homeland Security really drives that engine. And if Congress wants to change it, then Congress can. Well, you know, they shouldn't have to. There ought to be some sensible people in the Department of Homeland Security. At least with the change of personnel, there ought to be some sensible people. Well, having dealt with many sensible people in the Department of Homeland Security, there are sensible people there. Could you get them this case? I will. When I go back to Washington, I will convey the Court's concerns. There's no question about that. I will. I know that they will have access to a tape of this proceeding if I give them the Court's number. And I may very well invite them to listen to the tape. And you can explain your concerns to them yourself. Well, come and give Ted Ferguson a phone call. I will indeed, Your Honor. Thank you very much, unless the Court has further questions. Your Honor, I'd be pleased to take your telephone number. 818-400-6115. And we're open for business 24-7, day and night. So they can't miss you. This is the Department of Homeland Security calling. And the call will be taken, I understand. If there are no further questions, Your Honor, I will just conclude by asking the Court to affirm the decision of the Board, which affirmed the integration judge's denial of the motion for reconsideration sometime later. Thank you, Your Honor. All right. And we'll hear from Megan Barbero. Mr. Whalen. I had a few comments, Your Honor. Yes, go ahead. Yeah, I thought you, well, you looked like a man who could be Speaker of the House through central casting. All right, thank you. I don't want to be Speaker of the House this week. I could use your vote this week. Just a couple of comments. You don't have to read anything either. That's true. That's true. Yeah. The question was raised as to who makes the decision about whether to remand a case or whether to join in a joint motion. And that is the local office of the General Counsel's office in Los Angeles. And their policy for years has been to say no, just no. And there's now a new General Counsel, and there's some discussion that they might actually be beginning to think about joining in some of these cases. They have ample instruction and authority from Washington to do so, but it's within their discretion locally whether or not to join in a case. Secondly, you ask about the three children of Mr. Chong, who was deceased. One of the daughters is married to a U.S. citizen. Her application has been completely ready, and the I-130 has been approved. But in fact, I went to the DHS and asked them to join in a motion to reopen, and they said no. The second daughter was married and is now divorced. She is single, and the third child is a son, and he is also single. I-130s have been filed for him by his mother and by his American citizen sister. Because the mother came in and was placed in exclusion proceedings under the immigration rules, she was allowed to adjust status. So one of her children, one of her daughters that came in with her ---- What's the name? Give the name, would you, on your time? One of the daughters? I don't remember which daughter it was who became a permanent resident and then became a citizen, and then filed for mother. So mother and one of the daughters is ---- One's a citizen, one's a permanent resident. The ones we're talking about in this case are the ones that came in with the father, right? And the ones that came in with the father, even though the service said that they all entered legally, they did not. The father came into the United States ---- Now, wait a minute. The service said they all entered legally, did you say, or illegally? In the NTAs they issued, they alleged that they had entered as visitors for pleasure. In fact, they entered at JFK Airport and they walked away, and they were never inspected by immigration. Okay. So that's the reason one of her ---- But the government says they entered legally, you say. Right. Okay, so that's fine. And we admitted that allegation. Yeah. Entered legally. But they said that two out of the three entered legally, right? I'm sorry. Two out of the three children ---- Entered legally. The government said entered legally. In fact, none of them entered legally. Well, it doesn't matter. Two entered legally. Are you going to contest the government's finding? No, I love that. Okay, so two out of the three entered legally. And then one, the nine-year-old, they say entered illegally. Right. Does that make any sense? No. Okay. But we admitted all those allegations the first time we went to court. You admitted that two entered legally and one entered illegally? Yes. Okay. And the government produced no evidence on that particular issue because we had admitted the allegation. So there's no evidence. But when I went to the DHS to ask them to join in a motion to reopen, their reason for denying that motion was that, for refusing to join, was that the person I had asked about had, in fact, no proof of legal entry. So that's the nine-year-old. No, this was one of the daughters. They said in their charging papers entered legally. So whenever I pushed them to it, they said, no, she didn't enter legally. And I know from my discussions with them that, in fact, all three of the children walked away from the airport inspection in New York City and never went through inspection. So they were never inspected and admitted. So those are the only three points I wanted to make to sort of clear up some of the discussion that had gone on. Thank you very much. Thank you, Your Honor. Thank you, Your Honor. The court will adjourn. Let's hear from the pro bono. We've got one more lawyer coming. Okay. All right. I thought she was gone. All right, Megan. See if you can pull this all together. Very briefly, I just want to make two points. The first is that the record is clear that there was ineffective assistance of counsel in this case, that the only guaranteed opportunity for these three children to receive a ruling on ineffective assistance of counsel is from this Court. The government admitted during his argument that there was no guarantee that there would be equitable tolling of an untimely motion to reopen that was filed now to develop the issue, and there's no reason to require a motion to reopen in this case when the record is clear, the government hasn't contested the issue, and this Court can resolve it on the facts before it without requiring any additional factual development. Well, they are contesting in the sense that he asked that the decision be affirmed. Isn't that contesting it? He — but in his briefs, the only issue that he raises is jurisdiction. He doesn't address the underlying merits of the ineffective assistance of counsel claim, which is clear from the face of this record. And this is also not a case where there's any attempt to bypass the administrative agency. It was not until this Court initially identified the potential issue that it became clear that it was a problem in this case, and they've been represented by the same counsel throughout. The second point is just in response to a question that was raised on whether there are live claims. Clearly, the three children have ineffective assistance of counsel claims where there's a live controversy on those, and if it's sent back down, they have additional grounds that are not derivative of their father's asylum application, including not only withholding but also potential relief from deportation to Panama and their adjustment of status claims. For all of these reasons, we would request that the Court grant the petition for review on ineffective assistance of counsel and remand the underlying merits to the agency. Okay. Thank you very much. Anything further? We'll adjourn. Good. Okay. I'll rise. This Court for this session stands adjourned. Thank you.
judges: Pregerson, Reinhardt, Tashima